# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CRIMINAL NO.  1:05-CR-0433 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **TONEY SABATER** | : | |

## MEMORANDUM

Presently before the court is Toney Sabater's motion (Doc. 52) to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Sabater complains that he was prejudiced by ineffective assistance of counsel, in two respects. First, he claims that his counsel failed to properly investigate his case and conduct legal research before encouraging him to plead guilty. (See Doc. 53 at 6). Second, he contends that his counsel failed to fully explain the plea agreement to him. (See id. at 9). Sabater also argues that the court should reduce his sentence because one of his prior convictions, which enhanced his sentence for the instant offense, was vacated. (See id. at 13). In opposition to the pending motion, the government asserts that Sabater validly waived his rights to both direct and collateral appeals. (See Doc. 66 at 8). The government also contends that Sabater's claims do not constitute manifest injustice that would make Sabater's waiver unenforceable. (See id. at 8). For the reasons that follow, the court will deny Sabater's motion (Doc. 52).

## I.  Statement of Facts & Procedural History

A grand jury indictment, which was returned on November 2, 2005, charged Sabater with (1) criminal conspiracy to distribute and possess with intent to distribute 500 grams and more of cocaine hydrochloride, see 21 U.S.C. § 846, and

(2) distribution and possession with intent to distribute 500 grams and more of cocaine hydrochloride, see 21 U.S.C. § 841(a)(1). Sabater pled not guilty to this indictment during an initial appearance on January 25, 2006.

On June 14, 2006, a superceding information was filed, charging Sabater with two counts of interstate travel "in aid of racketeering enterprises," see 18 U.S.C. § 1952(a)(3). On the same day, a plea agreement signed by Sabater was filed with the court, and it included a provision under which he waived his "right to appeal any conviction and sentence" and his "right to challenge any conviction or sentence [. . .] in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255." (Doc. 30 ¶ 32). The final provision of the agreement is an acknowledgment indicating that Sabater read the agreement, "carefully reviewed every part of it" with counsel, and that he "fully understand[s] it" and "voluntarily agree[s] to it." (See id. at 15-16). Sabater pled guilty to the superceding information on July 3, 2006.

At Sabater's change of plea hearing, while he was under oath, the court repeatedly questioned Sabater about his understanding of the plea agreement, including the specific provision limiting his right to appeal or bring a collateral attack, and whether his counsel had discussed it with him. Sabater gave affirmative responses to all such questions. Subsequently, the court sentenced Sabater to 115 months' imprisonment, 3 years' supervised released, a $500 fine, and a $200 special assessment. The Third Circuit affirmed the conviction and sentence,

and the Supreme Court denied Sabater's petition for a writ of certiorari.  Sabater now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

Sabater admits that he signed the plea agreement containing the appeal waiver.  (Doc. 53 at 9).  As previously noted, however, he alleges that he did not receive effective assistance of counsel, and he contends that the waiver was therefore invalid.  He also argues that the court should resentence him because one of the state convictions which caused him to qualify as a career offender at his original sentencing has been vacated.

## II.  Discussion

A criminal defendant can waive both the right to appeal and the right to bring a collateral attack, provided that the waiver is made voluntarily and knowingly—that is, "with knowledge of the nature and consequences of the waiver."  U.S. v. Mabry, 536 F.3d 231, 236-37 (3d Cir. 2008).  In addition to examining the knowing and voluntary nature of the waiver, the court must also consider whether enforcing the waiver would result in a miscarriage of justice.  Id. at 237, 242-44.

### A.  Knowing and Voluntary Nature of the Waiver

The court will first consider whether defendant has waived his right to bring a collateral attack, such as a § 2255 motion.  See U.S. v. Mabry, 536 F.3d 231, 236-39 (3d Cir. 2008).  Sabater contends that, as a result of ineffective assistance of counsel, his waiver was not knowingly and voluntarily made.  (Doc. 53 at 4). The Third Circuit has already determined that Sabater knowingly and voluntarily waived his

3

right to a *direct* appeal, and he does not dispute this conclusion. He argues, however, that he has not properly waived his right to *collateral* review, including habeas corpus. (See Doc. 67 at 14-15). He also suggests that his affidavit presents new facts which distinguish the pending question from the issue that was previously presented to the Third Circuit.

It is Sabater's burden to "present[] an argument that would render his waiver unknowing or involuntary." Mabry, 536 F.3d at 237.[1] The allegations contained in Sabater's affidavit suggest that he did not knowingly and voluntarily waive his appeal rights.[2] However, these allegations are contradicted by his "[s]olemn declarations in open court[,]" which "carry a strong presumption of

---

[1] Sabater's contention that "the Third Circuit's [o]pinion on the right to [direct] appeal being waived could not automatically be transmogrified into the constitutional right of *habeas corpus* being waived" is well made, (see Doc. 67 at 15), but this argument does not establish that his waiver was unknowing or involuntary.

[2] In his affidavit, Sabater alleges the following: when he met with his counsel, Attorney Joshua D. Lock, to discuss the plea agreement, he informed Attorney Lock that he wished to petition for his two prior convictions to be vacated, (Doc. 53, Ex. B ¶ 19), he asked Attorney Lock if he would be able to file an appeal after sentencing, Attorney Lock assured him that he "retained his appellate rights[,]" (id. ¶ 21), and Attorney Lock stated that he would prepare and file a notice of appeal on Sabater's behalf, (id. ¶ 49). Sabater also avers that Attorney Lock never showed or explained the waiver provision to him (id. ¶ 24), and that he did not understand the waivers (id. ¶ 25). Sabater claims to believe that Attorney Lock was unaware that the waiver provision was in the plea agreement, and that if he had been aware of the waiver he would have negotiated for removal of that provision from the agreement, because he knew of Sabater's intention to attack the validity of his prior convictions. (Doc. 53 ¶¶ 60, 61). Finally, Sabater asserts that both Attorney Lock and Attorney Jerry Russo—an associate of Attorney Lock who attended the change of plea hearing in Attorney Lock's place—advised him to answer "yes" to all of the judge's questions in the hearing. (Id. ¶¶ 29, 30, 39).

verity." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). They are also undercut by the written plea agreement, which Sabater had opportunity to review, and the in-court colloquy (see Doc. 48 at 9-10, 16-17); see also United States v. Sabater, 270 F. App'x 219, 220-21 (3d Cir. 2008) (summarizing the evidence that Sabater's right to appeal was voluntarily, knowingly, and intelligently waived). During the colloquy, the court asked Sabater numerous questions about his understanding of the plea agreement, including the waiver provision in particular, and the court afforded Sabater the opportunity to ask questions about the waiver provision or any other provision of the agreement. (Doc. 48 at 9-10, 16-17). In light of the overwhelming evidence that Sabater's waiver was knowingly and voluntarily made, the allegations contained in his affidavit are not sufficient to persuade the court to the contrary.

### B. Miscarriage of Justice

The court must also examine whether enforcement of the waiver would give rise to a miscarriage of justice. Rather than "earmark[ing] specific situations" in which waivers of appeals should be invalidated, the Third Circuit has directed courts to consider the following factors before concluding that a waiver is invalid: "[t]he clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001) (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st

Cir. 2001)). The court must also "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver." Mabry, 536 F.3d at 243. Sabater presents two grounds on which the court could potentially find a miscarriage of justice: ineffective assistance of counsel, and vacatur of one of the prior convictions on which the court rested the career offender enhancement in Sabater's sentence. The court will address these issues *seriatim*.

### 1. **Ineffective Assistance of Counsel**

Sabater argues that his attorney provided ineffective assistance in several respects. First, he alleges that "counsel failed to conduct a proper investigation of this case and to research the legal issues before encouraging [him] to accept [the] plea offer and plead guilty[.]" (Doc 53 at 6). He also contends that "counsel failed to . . . fully and adequately apprise [him] as to the nature of § 2255 proceedings and the ramifications of waiving such." (Doc. 53 at 4, 9). The court will examine these claims in turn, to determine whether either establishes manifest injustice.

Sabater's allegation concerning the amount of investigation and research done by his attorney does not establish that enforcing the waiver would lead to manifest injustice. Sabater indicates that his attorney's only "strategy" was to convince Sabater to plead guilty, (Doc. 53 at 6), that he "essentially coerced [Sabater] to plead guilty[,]" (id. at 7), and that he failed to make reasonable investigations into the facts of the case and possible defenses, (id. at 7-8). Sabater makes a conclusory assertion that "[h]ad counsel conducted the necessary investigations he would most probably discovered facts to support a defense[,]" (id.

6

at 7-8), but he does not suggest what the facts or the defense might be. Based on the record presently before it, the court cannot conclude that the alleged error is a clear error, nor does it appear to have a deleterious impact on Sabater—indeed, it is not certain whether further investigations would have had any effect at all. Moreover, Sabater certainly "acquiesced in the result" by entering a guilty plea knowingly and voluntarily. After consideration of all the factors set forth in Teeter, 257 F.3d at 25-26, the court cannot find a miscarriage of justice in these circumstances.

The court has already discussed Sabater's second asserted basis of ineffective assistance—that is, the allegation that his attorney did not explain the significance of waiving collateral proceedings to him—in analyzing whether the waiver was knowingly and voluntarily made. See supra Part II.A. As previously noted, the record is replete with evidence that Sabater acted knowingly and voluntarily. Therefore, Sabater's arguments on this point do not persuade the court that enforcement of the waiver would work a miscarriage of justice.

### 2. **Vacatur of State Conviction**

Finally, Sabater informs the court that a New Jersey state court has vacated his conviction for "possession with intent to distribute cocaine" arising from an incident that occurred in 1992. If this conviction had not been in his record when he was sentenced by this court, then he would not have been classified as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines, and his criminal history category would have been V instead of VI. Sabater argues that, because the

7

conviction has been expunged from his record, the court should now reduce his sentence accordingly.

According to Sabater, "[t]he Supreme Court's holding in Johnson v. U.S., 544 U.S. 295 (2005)[,] clearly gives [the court] authority to resentence [Sabater] without application of the Career Offender classification based on the vacatur of the 1992 conviction." (Doc. 53 at 14). Sabater's reliance on Johnson is misplaced. Although the § 2255 motion at issue in Johnson was similar to Sabater's pending motion, in that Johnson attacked his federal sentence on the basis that a prior state conviction used to enhance his federal sentence had been vacated, see 544 U.S. at 298, Johnson is distinguishable from the instant case in at least two significant respects.

First, the question presented to the Supreme Court in Johnson was *when the statute of limitations began to run* on the § 2255 motion, not *whether the petitioner should be resentenced*, and therefore, the Court assumed—rather than held—that resentencing is appropriate when a prior conviction, used to enhance the sentence in question, has been vacated.[3] Second, and more importantly, there was no waiver

---

[3] In Johnson, the government assumed that Johnson would be entitled to federal resentencing if his collateral attack were timely. Id. at 302-03. Additionally, the Court noted that, in various past cases, it assumed "that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated." Id. at 303 (citing Custis v. United States, 511 U.S. 485 (1994), Daniels v. United States, 532 U.S. 374 (2001)).

8

of appellate rights in Johnson.[4]  Thus, nothing in Johnson compels this court to conclude that a miscarriage of justice would arise if it enforced Sabater's waiver.

As explained above, the undersigned must "look to the underlying facts" and consider various other factors to determine whether enforcement of the waiver would work a miscarriage of justice.  Mabry, 536 F.3d at 242-43.  The court concludes that, in this case, it would not.  Now that Sabater has successfully challenged the validity of one of his prior convictions, the fact that he waived his right to bring a collateral attack on his federal sentence seems exceptionally detrimental.  Indeed, at first glance, it may even seem unjust to permit Sabater's federal sentence to remain in effect.  However, Sabater also received significant benefits from the plea bargain, and he knowingly and voluntarily acquiesced to the waiver.  Hence, the court is not persuaded that enforcing the waiver would constitute a miscarriage of justice.

The court also notes that federal sentencing courts are not necessarily prohibited from relying on vacated state convictions.  To the contrary, unless the reason for vacating the state conviction falls within one of a few specified categories, the law *permits* a federal sentence to be based on a vacated state conviction.  The federal sentencing guidelines provide that "[s]entences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B)

---

[4] Nor did the Court discuss a waiver of appellate rights in Custis, 511 U.S. 485 or Daniels, 532 U.S. 374.

have been ruled constitutionally invalid in a prior case are not to be counted." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2, cmt. n.6 (2009). The guidelines do not prohibit counting other types of vacated convictions. Similarly, 18 U.S.C. § 3559(c)(7) provides as follows: "If the conviction for a serious violent felony or serious drug offense that was a basis for sentencing under this subsection is found . . . to be unconstitutional or is vitiated on the explicit basis of innocence, the person serving a sentence imposed under this subsection shall be resentenced to any sentence that was available at the time of the original sentencing." It does not mandate resentencing when a conviction is vacated for other reasons.

Sabater's case appears to be one in which his federal sentence *could* permissibly be based on his vacated state conviction, because Sabater does not contend that his conviction was determined to be unconstitutional, or the result of an error of law; nor does he claim that he was exonerated. The government reports that Sabater's case "was one of approximately 150 cases involving African American defendants who were arrested by New Jersey State Police in traffic stops on major New Jersey highways between January 1, 1988, and April 20, 1999[,]" which have been dismissed by New Jersey prosecutors' offices "in the interests of justice following the New Jersey Attorney General's acknowledgment that [there is] a colorable claim that the New Jersey State Police engaged in racial profiling during this time period." (Doc. 66 at 16). Sabater does not dispute this account. Therefore, the court cannot conclude that a miscarriage of justice would arise if Sabater's waiver is enforced and his § 2255 motion is accordingly denied. As a

result of Sabater's failure to meet his burden in this respect, the court must enforce the waiver which he knowingly and intelligently made.

## III. Conclusion

For the foregoing reasons, Sabater's motion (Doc. 52) to vacate will be denied. An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:      July 21, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:05-CR-0433** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **TONEY SABATER** | : | |

## **ORDER**

AND NOW, this 21st day of June, 2010, upon consideration of defendant's motion (Doc. 52) to vacate the sentence imposed by this court on November 1, 2006, and of defendant's election form (Doc. 55), electing to have the court rule upon the motion under 28 U.S.C. § 2255, it is hereby ORDERED that:

1. Defendant's motion (Doc. 52) is DENIED.

2. A certificate of appealability is DENIED. See 28 U.S.C. § 2253(c).


                                           S/ Christopher C. Conner
                                           CHRISTOPHER C. CONNER
                                           United States District Judge